

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

AUG 1 2002

| | |
|---|---|
| MELVIN COBB, ) | CASE NO.: 2-01-0340-12 |
| ) | |
| Plaintiff, ) | |
| ) | DEFENDANT'S MEMORANDUM OF LAW |
| vs. ) | IN SUPPORT OF POST-TRIAL MOTIONS |
| ) | |
| VETERANS LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

Defendant, Veterans Life Insurance Company ("Defendant" or "Veterans"), hereby respectfully submits this Memorandum of Law in Support of Defendant's Post-Trial Motions.

## INTRODUCTION

Pursuant to Fed.R.Civ.P. 50 and 59, Defendant seeks judgment as a matter of law, remittitur of damages, and, in the alternative, new trial. The jury verdict is contrary to the evidence, both in establishing liability and in finding bad faith. The punitive damages assessed by the jury are excessive under state law and violate due process under the test set down by the United States Supreme Court in *BMW of North America, Inc. v. Gore*, 116 S.Ct. 1589 (1996). For these reasons, the punitive damage award should be stricken or be reduced to an amount not greater than three times the tort damages found, or $15 thousand in total.

The jury was improperly instructed regarding spoliation. Spoliation is the destruction of evidence when a party knows, or reasonably should know, that discoverable materials are relevant to pending, imminent, or reasonably foreseeable litigation. Jamie S. Gorelick, *et al.*, *Destruction of Evidence* 3.1 at 93 (1988 and 1996). Defendant was under no duty to preserve the envelope containing the premium payment at issue, because at the time it was discarded there

48

was no pending, imminent, or reasonably foreseeable litigation, merely the transmittal of a premium. Indeed, the facts in this case strongly suggest that Plaintiff, not Defendant, was aided by the routine act performed, for if maintained, the postmark would almost certainly have disclosed that the premium was mailed well after the due date.

## STATEMENT OF THE CASE

This matter was tried before this Court from July 15 through July 18, 2002. The jury found in favor of Plaintiff on the breach of contract claim, and this Court awarded Plaintiff the face amount of the life insurance policy at issue of $95 thousand. The jury further found in favor of Plaintiff on his tort claim resulting in an award of $5 thousand in actual damages and $3 million in punitive damages. Judgment was entered on the bad faith verdict on July 18, 2002. An Amended Judgment incorporating the separate verdict for the $95 thousand policy amount was entered on July 25, 2002.

## STATEMENT OF THE FACTS

Veterans insured the life of Carolyn Cobb effective February 13, 1985 under a term life insurance policy (the "Policy"). The main beneficiary was her husband, Melvin Cobb. Premiums were due on the 13th of every month, subject to a 31-day grace period. Thus, each premium paid was for coverage from the 13th of a particular month through the 12th of the month immediately following regardless of the number of days in that month.

Veterans received premiums for the Policy which maintained coverage through October 12, 2000. The next premium payment was due on or before October 13, 2000, which the grace period extended to November 12, 2000. It was received on November 22, 2000, or nine days after expiration of the grace period.

Carolyn Cobb passed away on November 18, 2000. On November 20, 2000, Grippon Boags of the Harleston-Boags Funeral Home contacted Defendant's Customer Service Department and requested a claim form. This claim form was sent, via facsimile, to the Harleston-Boags Funeral Home on November 21, 2000. The claim form was completed by Plaintiff and Mr. Boags on November 21, 2000, and sent by certified mail to Defendant on that date.

As the evidence at trial disclosed, Defendant's claims examiner, Ellie Bitter, noted that the premium had been received quite some time after its due date and after Veterans had received notification of Carolyn Cobb's death. Ms. Bitter forwarded the claim file to her superior, Deborah Duffy, who reviewed the claim and then forwarded it to her supervisor, Brian Smith, Director of Claims. After reviewing the file, Mr. Smith sent the file back to Ms. Bitter requesting that a premium audit be performed. At Ms. Bitter's request, Veronica Bostick performed the audit and provided the information to Ms. Bitter. Ms. Bitter then sent the claims file back to Mr. Smith. Because he was unaware of the application of the mailbox rule, Mr. Smith deemed the premium paid upon receipt. Because Defendant's computer system reflected receipt of payment approximately two weeks after expiration of the grace period, Mr. Smith recommended a denial due to a lapse in the Policy. He consulted with his supervisor, Mary Ellen Fahringer, who concurred with his decision. Mr. Smith instructed Ms. Bitter to prepare a formal denial letter which included the purported date of receipt of payment, November 26, 2000. As the check paying the premium was not a part of the claims file, Ms. Bitter did not recognize that payment had actually been received on November 22, 2000.

The denial letter and a return premium check were sent to Plaintiff on December 21, 2000. There was no further contact by Plaintiff to Defendant until the filing of this lawsuit in

3

February 2001. Mr. Boags testified that he contacted Defendant's Customer Service Department after receiving notification of Defendant's intention to deny Plaintiff's claim. This testimony was contradicted by Brian Smith, who testified that Defendant's Customer Service Department had no record of Mr. Boags's alleged telephone call.

## ARGUMENT

### I. DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFF'S TORT CLAIM, INCLUDING IMPOSITION OF PUNITIVE DAMAGES.

Defendant is entitled under F.R.Civ.P. Rule 50(b) for judgment as a matter of law on Plaintiff's tort claim. Even if the tort judgment were to survive this motion, Defendant is entitled to a judgment denying punitive damages, or reducing them to an amount no greater than an additional $10 thousand.

A motion for judgment as a matter of law should be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." F.R.Civ.P. 50(a)(1). When ruling on a motion for judgment as a matter of law, a court should not weigh the evidence or appraise the credibility of the witnesses, but must view all the evidence in the light most favorable to the nonmoving party and draw all legitimate inferences in his favor. *Anheuser-Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316, 318 (4th Cir.1992), *cert. denied*, 506 U.S. 872, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992). Judgment as a matter of law may be granted only when there is no substantial evidence to support recovery by the party against whom the motion is directed. *Mattison v. Dallas Carrier Corp.*, 947 F.2d 95, 100 (4th Cir.1991).

### A. Defendant Is Entitled To Judgment As A Matter Of Law On Plaintiff's Tort Claim.

4

There was no legally sufficient evidentiary basis for a reasonable jury to find for Plaintiff on his claim that Defendant's decision to deny claims lacked any reasonable basis.

To establish the tort of bad faith refusal to pay a claim, Plaintiff was obliged to prove that there was no reasonable basis to support Veteran's decision to deny benefits. If there is <u>any</u> reasonable ground for contesting the claim, there is no bad faith as a matter of law. *Varnadore v. Nationwide Mutual Insurance Company*, 345 S.E.2d 711, 714 (S.C. 1986). Plaintiff failed to meet this burden. First, Veterans could reasonably conclude that the premium payment was not timely made given its receipt some nine days after the expiration of the grace period and following the death of the insured. Because the test is the absence of any reasonable ground for denial, this Court is obliged to take into account whether the denial would have been justified if the mailbox rule had been applied. Nine days is three times the three-day presumption in the Federal Rules of Civil Procedure at Rule 6(e) (allowing three extra days to be added to the prescribed period if service or notice is made by mail). As a matter of law, then, Veterans would not be guilty of bad faith if it rejected a demand for payment had the premium been received by mail as early as only four days after the expiration of the grace period.

Furthermore, once the letter of denial was provided to the Plaintiff, no inquiry, objection, request for reconsideration, or any other communication from Plaintiff was received by Veterans. South Carolina recognizes that there is an implied covenant of good faith and fair dealing in all contracts, and that "neither party [should] do anything to impair the other's rights to receive benefits under the contract." *Nichols v. State Farm Mutual Auto Ins. Co.*, 306 S.E.2d 616, 618, (S.C. 1983). By his failure to take issue with Veteran's denial of the claim, Plaintiff disabled himself from asserting bad faith by Veterans. It is Plaintiff who failed to meet his obligation to Veterans of good faith and fair dealing.

5

In addition, Plaintiff failed to meet his burden of proving actual damages arising from his tort claim. Plaintiff testified that he paid for the funeral he believed he could afford with the benefits to which he thought himself entitled. Upon the award of the contract damages, Plaintiff was made whole. Plaintiff made no other claim of loss and, thus, suffered none. If Plaintiff failed to prove any actual tort damage, the punitive award must likewise fall: a plaintiff cannot recover punitive damages without first recovering actual damages. *Mattison, supra,* 947 F.2d at 100.

## B.  Defendant Is Entitled To Judgment As A Matter Of Law Denying Punitive Damages.

Even if this Court denies the motion for judgment as a matter of law on tort liability, Defendant is entitled to judgment as a matter of law on punitive damages. A plaintiff must establish by clear and convincing evidence, reckless, willful or wanton misconduct to justify an award of punitive damages. S.C. Code Ann. § 15-33-135 (Law Co-op. Supp. 1990). Plaintiff's proof was merely a single case of a mistake with regard to the appropriate standard to apply when considering premium payment dates, a mistake that was irrelevant to a reasonable basis to deny the claim.[1] This, at best, is negligence. This is certainly not bad faith.

Defendant presented expert testimony, through William Hager, that it was not unusual or out of the ordinary for a life insurer not to have a compliance manual or a "bad faith avoidance" manual.[2] He also testified that it was not unusual for a life insurer not to have a claims manual or a defined claims review committee. As a former state insurance commissioner with experience in prosecuting insurance companies for improper conduct and having visited many

---

[1]   As explained above, Defendant was well within its rights to have initially rejected a premium received nine days late whatever the rule was: payment mailed or payment received.

[2]   The notion of a "bad faith avoidance" manual was a chimera raised by Plaintiff. There is not a shred of evidence that any insurer had such a volume.

6

insurance company facilities, including numerous life insurers, Mr. Hager was able to provide uncontroverted testimony as to the customary policies and practices of life insurance companies, including their departments, manuals, premium processing functions, and claims processing functions. Mr. Hager knew of no life insurers which handled the claims review process much differently than Defendant, and also knew of no life insurers which had a premium payment envelope retention policy. The expert further testified that he knew of no life insurers that had "bad faith avoidance" manuals and indicated that while a few may have compliance manuals, all life insurers that he was familiar with, including Veterans, have a compliance department. Mr. Hager also provided testimony concerning the various departments within the organization of most life insurers and indicated that Veterans had similar departments.

Plaintiff offered no evidence that Defendant's procedures, policies, corporate organization, and written documentation were not in conformance or compliance with industry standards. There was, thus, a complete lack of any evidence to establish under any standard (much less that of clear and convincing evidence) the reckless, willful, or wanton conduct necessary to permit an award of punitive damages. Because Plaintiff thereby "failed to make a showing on an essential element of his case with respect to which he had the burden of proof," *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996), Defendant is entitled to judgment as a matter of law on the issue of punitive damages.[3]

## II.   DEFENDANT IS ENTITLED TO REMITTITUR OR A NEW TRIAL ON THE AWARD OF PUNITIVE DAMAGES.

---

[3]   Judgment as a matter of law is appropriate as the evidence can support only one reasonable conclusion. See *Chaudhry v. Gallerizzo*, 174 F.3d 394, 405 (4th Cir. 1999), *cert. denied*, 528 U.S. 891, 120 S.Ct. 215, 145 L.Ed.2d 181 (1999); *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995); *Persinger v. Norfolk & Western Ry. Co.*, 920 F.2d 1185, 1189 (4th Cir. 1990).

The award by the jury of $3 million in punitive damages is excessive under South Carolina law, and, if allowed to stand, a denial of Defendant's right to due process under the United States Constitution. For either and both of these reasons, the punitive damages award should be reduced to not more than an amount which when added to the tort claim award of $5 thousand, will produce a treble damages award. Thus, punitive damages should be remitted to not more than $10 thousand.

As the Fourth Circuit has stated in *Atlas Food Systems and Services, Inc. v. Crane Nat. Vendors, Inc.*, 99 F.3d 587, 593 (1996):

> Remittitur, used in connection with Federal Rule of Civil Procedure 59(a), is the established method by which a trial judge can review a jury award for excessiveness. Remittitur is a process, dating back to 1822, by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award. *See Blunt v. Little*, 3 F. Cas. 760 (C.C. Mass. 1822) (No. 1578) (Story, J.). And the permissibility of remittiturs is now settled. *See* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2815, at 163 (1995). Indeed, if a court finds that a jury award is excessive, it is the court's duty to require a remittitur or order a new trial. *See Linn v. United Plant Guard Workers, Local 114*, 383 U.S. 53, 65-66, 86 S.Ct. 657, 664-65, 15 L.Ed.2d 582 (1966).

A.   **The Award Of Punitive Damages Was Excessive And Defendant Is Entitled To Remittitur Or New Trial.**

The same evidence--or, rather, the total lack of same--relating to willful, wanton, or reckless behavior by Defendant cited above in support of the motion for judgment as a matter of law, renders the $3 million punitive damage award excessive.

There is simply no conceivable explanation for the award of punitive damages based on the record. Defendant suffered no damages outside of contract damages.[4] The jury can only be

---

[4] A mere breach of contract, even if willful or with fraudulent purpose, is not sufficient to entitle a plaintiff to go to the jury on the issue of punitive damages. *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 202 (4th Cir. 1988). *See also* Restatement of Contracts § 1340 (3ded. 1968); 5A. Corbin, Contracts, § 1077 (1951).

8

understood to have acted upon improper considerations not founded on the evidence. As the South Carolina Supreme Court ruled in *Small v. Springs Industries, Inc.*, 357 S.E.2d 452 (S.C. 1987):

> When the verdict is grossly excessive and the amount awarded is so shockingly disproportionate to the injuries so as to indicate that the jury acted out of passion, caprice, prejudice, or other considerations not founded on the evidence, it becomes the duty of this Court, as well as the trial court, to set aside the verdict. *Easler v. Hejaz Temple, A.A.O.N.M.S. of Greenville, SC*, 285 S.C. 348, 329 S.E.2d 753 (1985); *Ray v. Simmon*, 245 S.C. 346, 140 S.E.2d 575 (1960).

The role of this Court in evaluating the jury's punitive damage award is outlined by the Fourth Circuit in *Atlas Food System, supra,* 99 F.3d at 595: "The court's review of the amount of a punitive damage award should involve a comparison of the court's independent judgment on the appropriate amount with the jury's award to determine whether the jury's award is so excessive as to work an injustice." A review of the evidence, an analysis of the relevant factors, and the absolute size of the punitive damage award in this case, as well as the 600 to 1 ratio[5] between punitive damages and the $5 thousand tort damages award, together render the punitive damages "so excessive as to work an injustice" and violative of South Carolina law.[6]

---

[5] As this Court recognized in placing the questions to the jury for tort liability and punitive damages together on the second jury verdict form, punitive damages follow tort liability, not contract liability. *See supra*. Accordingly, the ratio is properly arrived at by comparing the punitive award to the tort award, or $3 million to $5 thousand.

[6] *See: Crossley v. State Farm Mutual Automobile Insurance Company*, 415 S.E.2d 393 (1992) ( $34,863.06 actual damages and $30,000 punitive damages); *Nichols v. State Farm Mut. Auto Ins. Co.*, 306 S.E.2d 616 (1983) ($10,000 actual damages and $10,000 punitive damages); *Orangeburg Sausage Company*, 450 S.E.2d 66 (Ct. App. 1994) ( $800,000 actual damages reduced to $595, 216 and $1, 630,000 punitive damages); *Cock-N-Bull Steak House, Inc. v. Generali Insurance Company,* 466 S.E.2d 727 (S.C. 1996) ($52,000 actual damages and $1,500,000 punitive damages).

In *Mattison, supra*, 947 F.2d at 110, the Fourth Circuit, relying on *Gamble v. Stevenson*, 406 S.E.2d 350 (S.C. 1991), applied South Carolina's standard for review of punitive damages and identified four factors to consider:

> "(1) Relationship to harm caused: Any penalty imposed should take into account the reprehensibility of the conduct, the harm caused, the defendant's awareness of the conduct's wrongfulness, the duration of the conduct, and any concealment. Thus any penalty imposed should bear a relationship to the nature and extent of the conduct and the harm caused, including the compensatory damage award made by the jury.
>
> (2) Other penalties for the conduct: Any penalty imposed should take into account as a mitigating factor any other penalty that may have been imposed or which may be imposed for the conduct involved, including any criminal or civil penalty or any other punitive damages award arising out of the same conduct.
>
> (3) Improper profits and plaintiff's costs: The amount of any penalty may focus on depriving the defendant of profits derived from the improper conduct and on awarding the costs to the plaintiff of prosecuting the claim.
>
> (4) Limitation based on ability to pay: Any penalty must be limited to punishment and thus may not effect economic bankruptcy. To this end, the ability of the defendant to pay any punitive award entered should be considered."

In this case, application of the *Mattison* factors renders the punitive damage award excessive:

(1) The Relationship to Harm Caused

The record is devoid of evidence of reprehensible conduct by Defendant. The record is devoid of evidence of Defendant's awareness of the conduct's wrongfulness at the time of the denial. The record is devoid of evidence of concealment. Defendant's letter to Plaintiff explained the basis for denial in straightforward terms. The record is devoid of evidence that the reason for denial was anything other than that presented in the letter.

This case involves a single incident isolated in scope and time: one letter to one claimant denying coverage based on facially-sound reasons. There is nothing else.

(2) Other Penalties for the Conduct

Defendant was not otherwise penalized for the conduct which was the subject of this case.

(3) Improper Profits and Plaintiff's Costs

There is no evidence in the record that Defendant benefited from its denial of the claim beyond retaining the single contract amount at issue, and the contract claim award deprived Defendant of even that amount. Plaintiff recovered his attorneys fees through the award in the breach of contract claim.

(4) Limitation Based on Ability to Pay

While as an absolute matter, Veterans is able to pay the award, a punitive damage award of five percent of Veterans's net assets is, as a relative matter[7], overwhelming, causing harm to those constituencies who depend on Defendant's continued financial success.

A reviewing court engaged in determining whether an award of punitive damages is excessive should give consideration to legislative judgments concerning appropriate sanctions for the conduct at issue. Cf. *BMW*, 116 S.Ct. at 1603. In fact, as the Fourth Circuit noted in *Atlas Food Systems, supra,* 99 F.3d at 594-95, much of trial courts' "comparative institutional advantage" in evaluating punitive damage awards derives from "their experience in not only see[ing] punitive damage awards daily, but from being required frequently to impose penalties for punishment and deterrence in a wide array of circumstances, both in civil and criminal contexts." 99 F.3d at 594. The punitive damage award in this case is excessive in light of the penalties set by South Carolina for analogous wrongdoings.

---

[7] An award of $3 million in punitive damages against a company with a $1 billion in assets is very different than the same amount awarded against a company with $60 million in assets.

11

The South Carolina Unfair Trade Practices Act ("UTPA") is designed to protect the less powerful from unjust and inequitable practices of wrongdoers and to punish violators for their actions. S.C. Code Ann. § 39-5-10, *et seq.* (Law Co-op 1976). Under Section 39-5-140 of the UTPA, a plaintiff may recover treble damages. Additional punitive damages are not allowed. *Adamson v. Marianne Fabrics, Inc.*, 391 S.E.2d 249 (1990).

The Motor Vehicle Dealer's Act, South Carolina Code Ann. § 56-15-10, *et seq.* (the "Dealer's Act") declares certain unfair methods of competition and unfair or deceptive acts or practices to be unlawful. The statute provides that it is "unlawful for any manufacturer or motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to any of the parties or to the public." S.C. Code Ann. § 56-15-40(1) (1991). A party may recover double the actual damages, and the cost of suit, including a reasonable attorney's fee. In addition, if the jury finds that the defendant acted maliciously, the jury may award punitive damages not to exceed three times the actual damages. S.C. Code Ann. § 56-15-110 (1991).

Finally, and perhaps most apposite, are South Carolina's regulations which "impose a civil penalty not to exceed ten thousand dollars" for each general business practice of committing improper claim practices with frequency and "without just cause." S.C. Code Regs. 69-19, Sections 3(a) and 2 (1976). In the instant case, there was no frequency--only one instance shown--and Veterans had "just cause" to deny the claim, even if it were ultimately determined to have been mistaken.

The activities declared wrongful under the UTPA, the Dealer's Act, and particularly the insurance regulations are analogous to the wrongs allowed in the instant case. In limiting damages to treble damages, the legislature gave guidance in setting the proper relationship

12

between actual and punitive damages. The award of 600 times the actual damages in this case falls well outside those norms and should be eliminated entirely or remitted to no more than $10 thousand.

IV.   **THE AWARD OF PUNITIVE DAMAGES VIOLATES DEFENDANT'S RIGHT TO DUE PROCESS UNDER THE UNITED STATES CONSTITUTION AND MUST BE REMITTED.**

In *BMW of North America, Inc. v. Gore*, 116 S.Ct. 1589 (1996), a $4 million punitive damage award had been returned by an Alabama state court jury along with a $4 thousand actual damage award. The Alabama Supreme Court conditionally affirmed the punitive damage award after reducing it to $2 million. The United States Supreme Court held that the $2million punitive damage award was grossly excessive and, therefore, violated the defendant's due process rights.

The Supreme Court stated that a defendant must receive fair notice "not only of the conduct that will subject it to punishment but also of the severity of the penalty that a State may impose." *Id.* at 1598. The Court set forth three "guideposts" for determining whether a defendant had fair notice of the severity of the sanction. The preeminent guidepost is the reprehensibility of the defendant's conduct. *Id.* at 1599. The second is the ratio of punitive damages to the actual harm, and the third guidepost involves an analysis of sanctions for comparable misconduct. *Id.* at 1603.

As explained above, the record is devoid of evidence that Veterans acted reprehensibly. Also, the ratio of punitive damages to actual damages is excessive, and, in comparable circumstances, punitive damages only rarely exceed twice that of actual damages. The punitive damages award violates Defendant's due process rights and cannot stand.

V.   **BECAUSE OF THE CLEAR WEIGHT OF THE EVIDENCE, THE VERDICT SHOULD BE SET ASIDE UNDER RULE 59 AND A NEW TRIAL ORDERED.**

Even if this Court were to conclude that Defendant was not otherwise entitled to judgment as a matter of law, remittitur or a new trial, a new trial should be ordered because the verdict is contrary to the weight of the evidence. In *Garrison v. United States*, 62 F.2d 41, 42 (1932), the Fourth Circuit stated:

> Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; or under the constitutional guarantee of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility. He may, however, set aside a verdict supported by substantial evidence where in his opinion it is contrary to the clear weight of the evidence, or is based upon evidence which is false .... [8]

Thus, when a party has enough evidence to survive a motion for directed verdict and obtains a favorable verdict but the trial court is of the opinion that the case was decided against the clear weight of the evidence, the court, unmoved by passion or caprice, can effect justice by ordering a new trial. This is, at the very least, such a case, and a new trial should be ordered for all awards not otherwise overturned.

### VI. BECAUSE THE COURT IMPROPERLY CHARGED THE JURY REGARDING SPOLIATION OF EVIDENCE, THE VERDICT SHOULD BE SET ASIDE UNDER RULE 59 AND A NEW TRIAL ORDERED.

Until Plaintiff filed suit in February of 2001, Defendant had no knowledge that Plaintiff took issue with Defendant's rejection of his claim. The evidence at trial was that the envelope would have been destroyed shortly after its receipt, and well before Defendant had reason to

---

[8] *See also Aetna Casualty & Sur. Co. v. Yeats*, 122 F.2d 350, 352-53 (4th Cir. 1941):

> On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in the miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.

Also, *Atlas Food Systems, supra*, 99 F.3rd at 596-94 and cases cited therein.

14

believe that it might constitute relevant evidence "in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corporation*, 271 F.3d 583, 590 (4th Cir. 2001).

Because at the time the envelope was discarded no litigation was pending or reasonably foreseeable, the instruction that allowed the jury to infer spoliation by Defendant was in error. The closing argument by Plaintiff's counsel relied heavily on Defendant's alleged spoliation. The instruction was thus was hardly harmless error. For purposes of Defendant's post-trial motions, the impact of this error on the jury can be remedied by ordering a new trial pursuant to Fed.R.Civ.P 59.

## **CONCLUSION**

Veterans acted without malice, transparently, and reasonably when it refused to make payment on a claim when the premium required to keep the policy in force was received by Veterans nine days after the expiration of the grace period.

In prevailing on his contract claim, and being awarded attorney fees, Plaintiff was made whole. Although he suffered no other damages, the jury awarded him another $5 thousand (thereby rounding up the award to $100 thousand dollars). No reasonable jury could have concluded that the bad faith required for the tort claim existed.

The jury went further, and set an astounding figure of $3 million of punitive damages, an amount so out of line with the jury's tort award that it cannot be explained by the record, or by reasoned decisionmaking.

The Federal Rules have long provided the means by which courts can protect parties from manifest injustice when visited upon those parties by juries animated more by passion than reason. Veterans urges this Court to use those tools to restore balance to the resolution of this dispute.

15

Accordingly, Veterans asks this Court under Fed.R.Civ.P. 50 to enter judgment as a matter of law on the tort claim and its attendant claim for punitive damages. Alternatively, Veterans asks this Court to grant remittitur for all but $10 thousand of punitive damages, or a new trial. Finally, Veterans urges this Court to employ its supervisory power to grant a new trial on the challenged jury awards, if this Court deems the other remedies to be inappropriate.

WHEREFORE, for the reasons set forth above, Defendant respectfully requests that this Court grant its post-trial motions.

Respectfully submitted,

HAYNSWORTH SINKLER BOYD, P.A.
160 East Bay Street
Post Office Box 340
Charleston, SC 29402
(843) 722-3366

By: _____
John H. Tiller
Federal ID 4890
e-mail:jtiller@hsblawfirm.com

Attorneys for Defendant

___8/1___, 2002
Charleston, SC

16

## CERTIFICATE OF SERVICE

I, John H. Tiller, of Haynsworth Sinkler Boyd, P.A., attorneys for the Defendant, do hereby certify that I have this date **HAND-DELIVERED**, a true copy of the **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF POST-TRIAL MOTIONS** to all counsel of record.

*ATTORNEYS FOR PLAINTIFF*
Dwayne M. Green, Esq.
HAMPTON GREEN, LLC
Post Office Box 20009
Charleston, SC 29413

Henry E. Grimball, Esq.
BUIST, MOORE, SMYTHE
& McGEE, P.A.
Post Office Box 999
Charleston, SC 29402

_____
John H. Tiller
Attorney for Defendant

_____, 2002
Charleston, SC

H:\LITIGATE\11451\1\2-memo of law in support of post trial motions.doc   7/29/02 7:33 AMarthu